UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

BRANDON CAIN,

                    Plaintiff,                          Case No. 2:22-cv-229

v.                                                      Honorable Maarten Vermaat

UNKNOWN PARTIES #1 et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff

has been granted leave to proceed *in forma pauperis*. (ECF No. 5.) Pursuant to 28 U.S.C. § 636(c)

and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters

in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.15.)

This case is presently before the Court for preliminary review under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial

review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131,

1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a

putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless

notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.*, *v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Crane. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Morton, Unknown ADW, and the KCF Inspectors: (1) Plaintiff's official capacity claims; (2) Plaintiff's personal capacity claims seeking declaratory and injunctive relief; (3) Plaintiff's First Amendment access to the courts claims; (4) Plaintiff's Fourth Amendment claims; and (5) Plaintiff's Fourteenth Amendment due process claims. Plaintiff's First Amendment retaliation claims for damages against Defendants Morton, Unknown ADW, and the KCF Inspectors remain in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Sergeant Unknown Morton and Correctional Officer Unknown Crane. He also sues Unknown Parties #1, referred to as the KCF Inspectors, and Unknown Party #1, referred to as Unknown Assistant Deputy Warden (ADW). Plaintiff states that he is suing Defendants in both their official and individual capacities. (ECF No. 1, PageID.2.)

Plaintiff alleges that on September 22, 2022, Defendants Morton, Unknown ADW, and the KCF Inspectors directed housing unit officers to go into Plaintiff's cell and pack his property and belongings. (*Id.*, PageID.4.) Plaintiff's property was then taken to the Deputy's Suite. (*Id.*) Plaintiff filed a grievance concerning the confiscation of his legal documents, stating that he needed them for pending litigation. (*Id.*)

The next day, Plaintiff was called to the Deputy's Suite. (*Id.*) Defendants Morton, Unknown ADW, and the KCF Inspectors were present. (*Id.*) Plaintiff saw his property, including his legal documents, scattered throughout the office. (*Id.*) Plaintiff told Defendants that he needed the documents for pending litigation because he had "recently discovered information that would aid" him in having his life sentence potentially overturned. (*Id.*) One of the inspectors stated, "Well, you shouldn't have a problem in assisting us." (*Id.*) The Defendants that were present began to question Plaintiff about a shift officer in his unit. (*Id.*) They suggested that the officer was introducing contraband into KCF. (*Id.*) Plaintiff told the Defendants that he was "completely unaware of the situation." (*Id.*)

4

Either Defendant Unknown ADW or one of the inspectors stated, "Well, that's too bad, if you can't help us, we can't help you, don't you have some court dates approaching?" (*Id.*, PageID.5.) Plaintiff responded, "Help me do what?" (*Id.*) The other inspector stated, "Cain, you have a lot of legal work, you know that I can file a Notice of Intent and drag the process. You may never see your documents again." (*Id.*) Plaintiff continued to maintain that he had no information regarding the shift officer and that he was "unwilling to lie on anyone." (*Id.*) Defendant Morton stated, "Well, that's too bad, I'll have to write you this misconduct." (*Id.*) Plaintiff was then told that he would be transferred. (*Id.*) One of the inspectors smirked at Plaintiff and stated, "You know people have been known to have drugs on paper, we may have to check for that[.] Good luck getting your court stuff handled, since you can't help us." (*Id.*)

Plaintiff was ordered to leave the office and wait on a bench. (*Id.*) He was then cuffed and taken to administrative segregation. (*Id.*) Plaintiff received a misconduct for possessing a toothbrush and dental floss. (*Id.*) He contends that "[w]hat was supposed to be a Possession of Contraband Misconduct, was written as a Smuggling Misconduct." (*Id.*)

Plaintiff contends that while he was sitting in administrative segregation, which is near the Deputy's Suite, he saw Defendant Crane retrieving his property. (*Id.*) Plaintiff avers that it "was beyond obvious that large portions were missing." (*Id.*) Plaintiff began speaking to Defendant Crane through the door. (*Id.*) Defendant Crane looked at Plaintiff and stated, "Hey, you're a smuggler, be glad if we give you anything." (*Id.*)

That same day, Plaintiff was transferred to URF and placed in segregation there. (*Id.*, PageID.6.) He did not receive his property until September 28, 2022. (*Id.*) At that time, he discovered that over half of his legal documents were missing. (*Id.*) He was also missing several other items, including his Adidas flip-flops, his new Columbia boots, his headphones, and his

entire commissary order from September 20, 2022. (*Id.*) Plaintiff also contends that KCF officers failed to complete a "pack-up" slip for his property. (*Id.*, PageID.9.) Moreover, Defendant Crane wrote a misconduct premised upon finding an extension cord with exposed wires when packing Plaintiff's property. (*Id.*, PageID.10.)

Plaintiff then goes on to describe the legal documents and underlying litigation that he claims those documents were for. As background, Plaintiff is currently incarcerated for numerous offenses that occurred in Oakland and Wayne Counties. *See* Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=490544 (last visited Dec. 14, 2022). Plaintiff contends that the legal documents he lost relate to Wayne County case number 12-005176-01. In that case, Plaintiff was convicted of two counts of first-degree premediated murder, two counts of felony murder, two counts of torture, two counts of unlawful imprisonment, one count of felon in possession of a firearm, and one count of possession of a firearm during the commission of a felony following a jury trial in 2012. *See Cain v. Winn*, No. 2:19-cv-10346, 2019 WL 3063429, at *1 (E.D. Mich. July 11, 2019). Plaintiff was sentenced to life imprisonment. *Id.* That same year, Plaintiff was also sentenced to 28–50 years' imprisonment after being convicted of two counts of assault with intent to murder in Wayne County case number 12-003375. *People v. Lee*, Nos. 313302, 313303, 2015 WL 1814035, at *1 (Mich. Ct. App. Apr. 21, 2015).

Plaintiff avers that his family was finally able to afford a private investigator, who obtained Plaintiff's police file, discovery, federal file, and prosecution files for the two cases mentioned above. (ECF No. 1, PageID.6.) Plaintiff claims that the files for case 12-005176-01 contain internal memoranda showing that police had taken a statement from witness Angelice Jones, that an interview of Parrish Steen conducted by Detective Brennan had been memorialized in a police

report, and that plea deals had been offered, but that Plaintiff's attorney had never conveyed those deals to him. (*Id.*, PageID.6–7.) The record also contained cell tower information showing that Plaintiff was not in the Hamtramck, Michigan, area on February 28, 2012, at 10:00 p.m., contrary to testimony by the State's key witness. (*Id.*, PageID.7.) Plaintiff contends that prior to hiring the investigator, he was unaware of the existence of any of this evidence "at the time of [his] trial or during the filing of [his] originally filed [Michigan Court Rule] 6.500 motion [for relief from judgment]." (*Id.*) He alleges that the State's failure to turn over this evidence, all of which Plaintiff claims is exculpatory, violates *Brady v. Maryland*, 373 U.S. 83 (1963). Plaintiff claims that he could have presented additional claims regarding the withholding of evidence and the failure of counsel to convey plea deals in an amended 6.500 motion, but that he is unable to do so "without said documents as without proof [his] claims will simply be baseless and held as abandoned and unproven." (*Id.*, PageID.9.)

Plaintiff alleges that he reached out to the private investigator to try to get new copies of the lost documents. (*Id.*, PageID.10.) The investigator told Plaintiff that all documents and discs related to Plaintiff's case had been destroyed in a home flood. (*Id.*) The investigator also told Plaintiff that he was not currently taking cases, but could recommend another investigator and that Plaintiff would have to pay for the documents again. (*Id.*) Plaintiff contends that new copies of the documents would cost thousands of dollars, and that he and his family are unable to afford those costs. (*Id.*) Plaintiff was also unable to obtain assistance from his trial and appellate attorneys because they no longer possessed any documents related to Plaintiff's case. (*Id.*) Moreover, they never possessed the documents at issue because they were never turned over by the State. (*Id.*)

Plaintiff contends further that his federal habeas petitions challenging the two convictions described above have been held in abeyance by the United States District Court for the Eastern

District of Michigan while Plaintiff exhausts his state court remedies. (*Id.*, PageID.12.) Plaintiff initiated his state court remedies by filing a 6.500 motion in both cases, "premised on [his] [a]ttorney receiving funds from a [p]rosecutor's key witness." (*Id.*, PageID.13.) A year later, Plaintiff received the documents described above. (*Id.*) He filed a motion in Wayne County Circuit Court asking that his 6.500 motion be held in abeyance so that he could file an amended 6.500 motion "to include issues that stemmed from the findings gathered and provided to [him] by [the] [p]rivate [i]nvestigator." (*Id.*) Plaintiff prepared his amended motion and contends that it was in his legal property "with all necessary documents attached to verify [his] claims." (*Id.*) Plaintiff contends that when he prepared it, he was unable to make copies due to lack of funds. (*Id.*) He alleges that without the missing documents, he is "forever barred from raising said claims which could result in [him] spending the rest of [his] life in prison." (*Id.*) Plaintiff's post-conviction proceedings in both cases noted above are still pending. *See* Register of Actions, Case Nos. 12-003375-01 and 12-005176, https://cmspublic.3rdcc.org/default.aspx (select "Criminal Case Records," select "Search By Defendant," type "Cain" for "Last Name" and "Brandon" for "First Name," select "Search," then select the links for Case Nos. 12-003375-01-FC and 12-005176-01-FC) (last visited Dec. 19, 2022).

Based on the foregoing, the Court construes Plaintiff's complaint to assert First Amendment retaliation and access to the courts claims, a Fourth Amendment claim premised on the search of his cell, and Fourteenth Amendment due process claims premised upon the loss of his property and his receipt of misconducts. Plaintiff seeks an order directing KCF staff to return his documents and to provide him with funds to replace his confiscated documents. (ECF No. 1, PageID.15.) Plaintiff also seeks declaratory relief, as well as compensatory and punitive damages. (*Id.*)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Official Capacity Claims

As noted *supra*, Plaintiff sues Defendants in both their official and personal capacities. (ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Official capacity actions seeking injunctive relief, however, constitute an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The

United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Plaintiff, however, is no longer confined at KCF, where he avers that the individual Defendants are employed. The Sixth Circuit has held that transfer to another prison facility moots a prisoner's claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Underlying this rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g., id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Plaintiff is now incarcerated at URF, and the individual Defendants are not employed at that facility. Plaintiff,

therefore, cannot maintain official capacity claims for declaratory and injunctive relief against Defendants.[2]

Accordingly, for the reasons set forth above, Plaintiff's official capacity claims against Defendants will be dismissed.

### B.   Individual Capacity Claims

#### 1.   First Amendment Claims

##### a.   Access to the Courts

The Court has construed Plaintiff's complaint to assert a First Amendment access to the courts claim related to the seizure of his legal documents.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff

---

[2] To the extent Plaintiff seeks declaratory and injunctive relief against Defendants in their individual capacities, such claims will also be dismissed for the reasons set forth above.

must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

As discussed above, Plaintiff has motions for relief from judgment pursuant to Michigan Court Rule 6.500 pending in two of his Wayne County criminal cases. Those post-conviction proceedings are still pending, and Plaintiff contends that they have been stayed to allow him to file amended 6.500 motions raising new claims for relief. Plaintiff, therefore, has sufficiently alleged

that the underlying cause of action at issue is the type of action for which there can be an actual injury.

Plaintiff alleges that without the missing documents described above, he is "forever barred from raising said claims which could result in [him] spending the rest of [his] life in prison." (ECF No. 1, PageID.12.) Plaintiff seeks to raise claims related to the State's failure to disclose exculpatory evidence, as well as claims that counsel never conveyed plea offers to him. Plaintiff avers that he prepared an amended 6.500 motion, but that the draft motion, along with all the supporting documents, were seized by Defendants.

Although Plaintiff alleges that his draft motion and supporting documents were seized, the complaint does not allege facts from which the Court can infer any harm to the underlying state court actions. Plaintiff himself acknowledges that his post-conviction proceedings remain pending and have been stayed to allow him to file an amended motion. While Plaintiff may not be able to file an amended 6.500 motion with documents supporting his claims, he has not alleged, and the Court does not discern, why he cannot file an amended 6.500 motion that sets forth his new claims for relief and explains to the state court why he cannot submit supporting documentation. Presumably, the private investigator who obtained that documentation for Plaintiff did not take the original files from law enforcement, and all those documents are still in the possession of the investigating agency. Plaintiff does not explain why he cannot request that the state court permit him discovery, perhaps in the form of a subpoena, so the records at issue could be obtained.

The Sixth Circuit has noted that "[e]xamples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)). Here, Plaintiff's allegations of a lost remedy are based

14

only on speculation that his claims for relief will be dismissed if he cannot submit supporting documentation. Plaintiff has failed to show any lost remedy, and, therefore, has failed to state a claim for denial of access to the courts. Accordingly, the Court will dismiss his First Amendment access to the courts claims against Defendants.

### b.    Retaliation

The Court has also construed Plaintiff's complaint to assert First Amendment retaliation claims. Specifically, the Court has construed the complaint to assert that Defendants Morton, Unknown ADW, and the KCF Inspectors retaliated against Plaintiff for refusing to provide information regarding the shift officer by: (1) seizing his property, including his legal documents, and not returning them; (2) issuing a misconduct for smuggling; and (3) transferring him to URF, where he was placed in the segregation unit.[3]

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

---

[3] The Court does not construe Plaintiff to raise a retaliation claim against Defendant Crane, and even if Plaintiff did intend to raise such a claim, the complaint is devoid of any facts to support a retaliation claim against Defendant Crane.

With respect to protected conduct, Plaintiff alleges that Defendants Morton, Unknown ADW, and the KCF Inspectors questioned him about a shift officer who they suspected was introducing contraband into KCF. (ECF No. 1, PageID.4.) Plaintiff responded that he "was completely unaware of the situation." (*Id.*) Plaintiff also stated that he was "unwilling to lie on anyone." (*Id.*)

At this stage of the proceedings, Plaintiff's statements that he had no information and refused to lie about someone appear to be protected conduct. "[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). In the context of prison, of course, the right to speak or not speak is necessarily constrained. The Supreme Court "has repeatedly recognized the need for major restrictions on a prisoner's rights." *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977). Thus, an inmate "retains [only] those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

The United States Court of Appeals for the Second Circuit has concluded that refusing to provide false information and refusing to serve as a snitch on an ongoing basis were not inconsistent with a plaintiff's status as a prisoner and, therefore, were examples of protected conduct under the First Amendment. *See Burns v. Martuscello*, 890 F.3d 77, 88–93 (2d Cir. 2018). *But see Dixon v. Gonzales*, No. 1:09-cv-172, 2009 WL 3416005, at *3 n.1 (E.D. Cal. Oct. 21, 2009) ("To the extent Plaintiff is attempting to state a claim for retaliation based upon a right to not speak (i.e., not to 'snitch'), that claim also fails.").

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising

his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

The Court has identified three potential adverse actions: (1) the confiscation of Plaintiff's legal materials; (2) his receipt of a smuggling misconduct; and (3) his transfer to URF, where he was placed in segregation. The Sixth Circuit has concluded that a cell search may be considered sufficiently adverse to satisfy the adverse-action requirement of *Thaddeus-X*, where the search leaves the cell in disarray and results in the confiscation or destruction of materials. *See Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)). The issuance of a misconduct charge can be considered an adverse action as well. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[ ] an adverse action"); *see also Hill*, 630 F3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"); *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation.").

Generally, transfers from one prison to another prison of the same security level are not typically adverse actions. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). In *Hill*, however, the Sixth Circuit held that transfer to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action. *Hill*, 630 F.3d at 474–75. The *Hill* court determined that transfer to a lock-down unit at another facility is more than just a transfer, and is more akin to the transfer in *Siggers-El v. Barlow*, 412 F.3d 693, 701–02 (6th Cir. 2005), in which the consequence of transfer would affect the prisoner's ability to pay his lawyer,

17

thereby affecting his access to the courts. Given Plaintiff's contention that he was placed into the segregation until upon his transfer to URF, the Court concludes that he has sufficiently alleged that the transfer constitutes adverse action.

Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse actions were motivated by the protected conduct. Here, Plaintiff alleges that when he stated that he was unaware of the situation with the shift officer, the one inspector stated, "Well, that's too bad, if you can't help us, we can't help you, don't you have some court dates approaching?" (ECF No. 1, PageID.5.) The other inspector stated, "Cain, you have a lot of legal work, you know that I can file a Notice of Intent and drag the process. You may never see your documents again." (*Id.*) When Plaintiff maintained that he was unaware of the situation, Defendant Morton said, "Well, that's too bad, I'll have to write you this misconduct." (*Id.*) Plaintiff was then told he would be transferred, and one inspector stated, "Good luck getting your court stuff handled, since you can't help us." (*Id.*) Given these statements, Plaintiff has sufficiently alleged that the adverse actions were motivated by his refusal to provide information about an incident of which he was unaware. Moreover, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). Although Plaintiff has by no means proven retaliation, viewing the allegations in the complaint in the light most favorable to Plaintiff, the Court finds that he has set forth plausible First Amendment retaliation claims against Defendants Morton, Unknown ADW, and the KCF Inspectors.

### 2. Fourth Amendment Claim

The Court has also construed Plaintiff's complaint to assert a Fourth Amendment claim premised upon the entry into his cell by unit officers, acting under directions given by Defendants

Morton, Unknown ADW, and the KCF Inspectors, to take Plaintiff's property. In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court considered and rejected a Fourth Amendment claim similar to Plaintiff's. In that case, a prison official searched a prisoner's cell and destroyed some of his legal papers in the process. *Id.* at 519, 535. The prisoner claimed that the prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment. *Id.* at 530. The Court disagreed.

First, the Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security." *Id.* at 523–24 (internal citation omitted). The Court then determined that the official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28. For similar reasons, the Court held that "the Fourth Amendment does not protect against seizures in a prison cell [.]" *Id.* at 528 n.8. According to the Court, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.*

Applying *Hudson* to Plaintiff's case, the Fourth Amendment did not prohibit Defendants Morton, Unknown ADW, and the KCF Inspectors from authorizing staff to enter Plaintiff's cell and confiscated his property. Therefore, Plaintiff fails to state a claim for a violation of his Fourth Amendment rights.

### 3. Fourteenth Amendment Due Process Claims

#### a. Deprivation of Property

The Court has also construed Plaintiff's complaint to assert Fourteenth Amendment due process claims against all Defendants premised upon the deprivation of his property. Any such claim, however, is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. *Parratt*, 451 U.S. at 541. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Id.* at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson*, 468 U.S. at 530–36. Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state or any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state court action would not afford him complete relief

20

for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim against Defendants regarding the deprivation of his property will be dismissed.

### b.  Receipt of Misconducts

The Court has liberally construed Plaintiff's complaint to assert a Fourteenth Amendment procedural due process claim premised upon his receipt of a misconduct for smuggling, as well as a misconduct from Defendant Crane after he found an extension cord with exposed wires in Plaintiff's property. It appears that Plaintiff believes these misconducts are false. A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

As an initial matter, Plaintiff's complaint is wholly devoid of any facts concerning whether he was convicted of the smuggling misconduct. Moreover, his complaint is wholly devoid of any facts concerning what the misconduct Defendant Crane issued charged him with and if he was convicted of that misconduct. In any event, Plaintiff does not allege that any misconduct conviction had any effect on the duration of his sentence—and he cannot. As noted *supra*, Plaintiff is serving, *inter alia*, a life sentence without parole imposed in 2012 for two counts of first-degree premeditated murder. *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=4 90544 (last visited Dec. 14, 2022). For inmates serving sentences for offenses committed after 2000, even a major misconduct conviction results only in the accumulation of "disciplinary time." *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to

aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). As noted *supra*, Plaintiff's life sentence precludes him from the possibility of parole. Even if he accumulated disciplinary time, that sanction would not warrant due process protections.

Plaintiff suggests that he was placed in administrative segregation and then was placed in segregation after being transferred to URF. Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period does not implicate a liberty interest. *See, e.g., Jones v. Baker*, 155 F.3d 810, 812–13 (6th Cir. 1998) (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation

implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

While Plaintiff may have been housed in segregation during disciplinary proceedings, his complaint is devoid of allegations suggesting that he was found guilty of either of the misconducts and sanctioned to segregation as a result. Plaintiff, therefore, fails to allege any facts showing that he was subjected to conditions which would implicate a liberty interest because of the allegedly false misconduct tickets. His Fourteenth Amendment procedural due process claims against Defendants will, therefore, be dismissed.

### c. Substantive Due Process

To the extent Plaintiff has raised a substantive due process claim regarding the allegedly false misconducts, he fails to state such a claim.

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). Plaintiff's complaint, however, is devoid of any allegations from which the Court could infer that any of the named Defendants acted to

frame Plaintiff by planting the toothbrush, dental floss, and extension cord that formed the bases of the misconducts.

Moreover, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First and Fourth Amendments, as well as the Fourteenth Amendment's protections regarding procedural due process, apply to Plaintiff's claims for relief. Consequently, any intended substantive due process claim will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Crane will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Morton, Unknown ADW, and the KCF Inspectors: (1) Plaintiff's official capacity claims; (2) Plaintiff's personal capacity claims seeking declaratory and injunctive relief; (3) Plaintiff's First Amendment access to the courts claims; (4) Plaintiff's Fourth Amendment claims; and (5) Plaintiff's Fourteenth

Amendment due process claims. Plaintiff's First Amendment retaliation claims for damages against Defendants Morton, Unknown ADW, and the KCF Inspectors remain in the case.

An order consistent with this opinion will be entered.


Dated:   January 3, 2023                          /s/ *Maarten Vermaat*
                                                  Maarten Vermaat
                                                  United States Magistrate Judge