UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

BRANDON CAIN,

          Plaintiff,          Case No. 2:22-cv-229

v.                                   Honorable Maarten Vermaat

UNKNOWN PARTIES #1 et al.,

          Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.15.)[1]

In an opinion and order (ECF Nos. 6, 7) entered on January 3, 2023, the Court partially dismissed Plaintiff's complaint for failure to state a claim upon which relief may be granted. Specifically, the Court dismissed Plaintiff's: (1) official capacity claims; (2) personal capacity claims seeking declaratory and injunctive relief; (3) First Amendment access to the courts claims; (4) Fourth Amendment claims; (5) Fourteenth Amendment due process claims regarding the deprivation of his property; and (6) Fourteenth Amendment procedural and substantive due process claims regarding the issuance of allegedly false misconducts. *See Cain v. Unknown Parties*, No. 2:22-cv-229, 2023 WL 21439, at *12 (W.D. Mich. Jan. 3, 2023). The Court also dismissed Defendant Crane. *Id.* The Court noted that Plaintiff could proceed with his First

---

[1] (*See* Op., ECF No. 6, PageID.64–66.)

Amendment retaliation claims for damages against Defendants Morton, Unknown ADW, and the KCF Inspectors. *Id.*

In an order (ECF No. 8) entered on January 4, 2023, the Court stayed this matter and referred it to the Prisoner Civil Rights Litigation Early Mediation Program. On January 30, 2023, however, Plaintiff filed a statement seeking exclusion from the early mediation program. (ECF No. 11.) On January 31, 2023, the matter was removed from mediation, the stay was lifted, and service of the complaint upon Defendant Morton was ordered. (ECF Nos. 13, 14.) The docket reflects that Defendant Morton returned his executed waiver of service on February 9, 2023. (ECF No. 18.)

Presently before the Court are two motions for leave to file an amended complaint (ECF Nos. 12, 15), to which Plaintiff has attached proposed amended complaints, as well as Plaintiff's motion to strike his first-filed motion for leave to file (ECF No. 16). The Court will grant Plaintiff's motion to strike (ECF No. 16) and, therefore, deny his first motion for leave to file an amended complaint (ECF No. 12) as moot.

Plaintiff seeks to amend his complaint to "cure the errors in his complaint." (ECF No. 15, PageID.163.) Plaintiff "believes his Amended Complaint properly addresses each deficiency especially those regarding his 'Access to Court Claim.'" (*Id.*) Plaintiff states that he has "added facts and [e]xhibits concerning his inability to now file any additional pleadings with the Wayne County Circuit Court, [and that he] also details his Due Process violation." (*Id.*, PageID.164.)

Federal Rule of Civil Procedure 15 provides that a party may amend its pleadings by leave of court and that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified some circumstances in which "justice" might counsel against granting leave to amend: "undue delay, bad faith or

2

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.* at 182. The Court noted that the grant or denial of the opportunity to amend was discretionary with the district court and that the district court should provide a justifying reason for its decision. *Id.*

Moreover, under Rule 15(d) of the Federal Rules of Civil Procedure, a party may seek and the court may permit supplemental pleadings "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *Id.* While leave to permit a supplemental pleading is favored, it cannot be used to introduce a separate, distinct, and new cause of action. *Planned Parenthood of S. Cal v. Neeley*, 130 F.3d 400, 402 (9th Cir. 1997). When a motion seeks to add entirely new claims that occurred before the original pleading, the motion is properly considered to be a motion to amend, not one to supplement. *Michael v. Ghee*, 498 F.3d 372, 386 (6th Cir. 2007); *see also United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002) (discussing that within the meaning of Rule 15, supplements relate to events that have transpired *since* the date of the original pleading, while amendments typically rely on matters in place *prior to* the filing of the original pleading).

Upon review of Plaintiff's proposed amended complaint, the Court concludes that Plaintiff's proposed new allegations concern events that occurred both prior to the filing of the original pleading and since the date of the original pleading. The Court cannot conclude that it would be entirely futile to grant Plaintiff leave to amend. Moreover, to the extent Plaintiff seeks to supplement with facts relating to events that have transpired since the date of his original complaint, Plaintiff is not seeking to introduce a separate, distinct, and new cause of action. Rather, Plaintiff seeks to amplify his First Amendment access to the courts claim and his Fourteenth

3

Amendment due process claim. The Court, therefore, will grant Plaintiff's motion for leave to amend (ECF No. 15) and will deem the operative pleading to consist of Plaintiff's initial complaint and exhibits (ECF No. 1) and the amended statement of claim (ECF No. 15-1) attached as his proposed amended complaint. The Court will also vacate the prior order of partial dismissal (ECF No. 7) to the extent it dismissed certain claims.

However, as the Court previously indicated, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim against Defendant Crane. The Court will also dismiss Hearing Officer O'Brien to the extent Plaintiff intended to name her as a Defendant. Further, the Court will dismiss, for failure to state a claim: the following claims against remaining Defendants Morton, Unknown ADW, and the KCF Inspectors: (1) Plaintiff's official capacity claims; (2) Plaintiff's personal capacity claims seeking declaratory and injunctive relief; (3) Plaintiff's Fourth Amendment claims; and (4) Plaintiff's Fourteenth Amendment due process claims. Plaintiff's First Amendment access to the courts and retaliation claims for damages against Defendants Morton, Unknown ADW, and the KCF Inspectors remain in the case.

**Discussion**

I.     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Sergeant Unknown Morton and Correctional Officer Unknown Crane. He also sues Unknown Parties #1, referred to as the KCF Inspectors, and Unknown Party #1, referred to as Unknown Assistant Deputy Warden (ADW). Plaintiff states that he is suing Defendants in both their official and individual capacities. (ECF No. 1, PageID.2.)

A.     **Initial Complaint**

Plaintiff alleges that on September 22, 2022, Defendants Morton, Unknown ADW, and the KCF Inspectors directed housing unit officers to go into Plaintiff's cell and pack his property and belongings. (*Id.*, PageID.4.) Plaintiff's property was then taken to the Deputy's Suite. (*Id.*) Plaintiff filed a grievance concerning the confiscation of his legal documents, stating that he needed them for pending litigation. (*Id.*)

The next day, Plaintiff was called to the Deputy's Suite. (*Id.*) Defendants Morton, Unknown ADW, and the KCF Inspectors were present. (*Id.*) Plaintiff saw his property, including his legal documents, scattered throughout the office. (*Id.*) Plaintiff told Defendants that he needed the documents for pending litigation because he had "recently discovered information that would aid" him in having his life sentence potentially overturned. (*Id.*) One of the inspectors stated, "Well, you shouldn't have a problem in assisting us." (*Id.*) The Defendants that were present began to question Plaintiff about a shift officer in his unit. (*Id.*) They suggested that the officer was

introducing contraband into KCF. (*Id.*) Plaintiff told the Defendants that he was "completely unaware of the situation." (*Id.*)

Either Defendant Unknown ADW or one of the inspectors stated, "Well, that's too bad, if you can't help us, we can't help you, don't you have some court dates approaching?" (*Id.*, PageID.5.) Plaintiff responded, "Help me do what?" (*Id.*) The other inspector stated, "Cain, you have a lot of legal work, you know that I can file a Notice of Intent and drag the process. You may never see your documents again." (*Id.*) Plaintiff continued to maintain that he had no information regarding the shift officer and that he was "unwilling to lie on anyone." (*Id.*) Defendant Morton stated, "Well, that's too bad, I'll have to write you this misconduct." (*Id.*) Plaintiff was then told that he would be transferred. (*Id.*) One of the inspectors smirked at Plaintiff and stated, "You know people have been known to have drugs on paper, we may have to check for that[.] Good luck getting your court stuff handled, since you can't help us." (*Id.*)

Plaintiff was ordered to leave the office and wait on a bench. (*Id.*) He was then cuffed and taken to administrative segregation. (*Id.*) Plaintiff received a misconduct for possessing a toothbrush and dental floss. (*Id.*) He contends that "[w]hat was supposed to be a Possession of Contraband Misconduct, was written as a Smuggling Misconduct." (*Id.*)

Plaintiff contends that while he was sitting in administrative segregation, which is near the Deputy's Suite, he saw Defendant Crane retrieving his property. (*Id.*) Plaintiff avers that it "was beyond obvious that large portions were missing." (*Id.*) Plaintiff began speaking to Defendant Crane through the door. (*Id.*) Defendant Crane looked at Plaintiff and stated, "Hey, you're a smuggler, be glad if we give you anything." (*Id.*)

That same day, Plaintiff was transferred to URF and placed in segregation there. (*Id.*, PageID.6.) He did not receive his property until September 28, 2022. (*Id.*) At that time, he

6

discovered that over half of his legal documents were missing. (*Id.*) He was also missing several other items, including his Adidas flip-flops, his new Columbia boots, his headphones, and his entire commissary order from September 20, 2022. (*Id.*) Plaintiff also contends that KCF officers failed to complete a "pack-up" slip for his property. (*Id.*, PageID.9.) Moreover, Defendant Crane wrote a misconduct premised upon finding an extension cord with exposed wires when packing Plaintiff's property. (*Id.*, PageID.10.)

Plaintiff then goes on to describe the legal documents and underlying litigation that he claims those documents were for. As background, Plaintiff is currently incarcerated for numerous offenses that occurred in Oakland and Wayne Counties. *See* Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=490544 (last visited Feb. 21, 2023). Plaintiff contends that the legal documents he lost relate to Wayne County case number 12-005176-01. In that case, Plaintiff was convicted of two counts of first-degree premediated murder, two counts of felony murder, two counts of torture, two counts of unlawful imprisonment, one count of felon in possession of a firearm, and one count of possession of a firearm during the commission of a felony following a jury trial in 2012. *See Cain v. Winn*, No. 2:19-cv-10346, 2019 WL 3063429, at *1 (E.D. Mich. July 11, 2019). Plaintiff was sentenced to life imprisonment. *Id.* That same year, Plaintiff was also sentenced to 28–50 years' imprisonment after being convicted of two counts of assault with intent to murder in Wayne County case number 12-003375. *See People v. Lee*, Nos. 313302, 313303, 2015 WL 1814035, at *1 (Mich. Ct. App. Apr. 21, 2015).

Plaintiff avers that his family was finally able to afford a private investigator, who obtained Plaintiff's police file, discovery, federal file, and prosecution files for the two cases mentioned above. (ECF No. 1, PageID.6.) Plaintiff claims that the files for case 12-005176-01 contain internal

7

memoranda showing that police had taken a statement from witness Angelice Jones, that an interview of Parrish Steen conducted by Detective Brennan had been memorialized in a police report, and that plea deals had been offered, but that Plaintiff's attorney had never conveyed those deals to him. (*Id.*, PageID.6–7.) The record also contained cell tower information showing that Plaintiff was not in the Hamtramck, Michigan, area on February 28, 2012, at 10:00 p.m., contrary to testimony by the State's key witness. (*Id.*, PageID.7.) Plaintiff contends that prior to hiring the investigator, he was unaware of the existence of any of this evidence "at the time of [his] trial or during the filing of [his] originally filed [Michigan Court Rule] 6.500 motion [for relief from judgment]." (*Id.*) He alleges that the State's failure to turn over this evidence, all of which Plaintiff claims is exculpatory, violates *Brady v. Maryland*, 373 U.S. 83 (1963). Plaintiff claims that he could have presented additional claims regarding the withholding of evidence and the failure of counsel to convey plea deals in an amended 6.500 motion, but that he is unable to do so "without said documents as without proof [his] claims will simply be baseless and held as abandoned and unproven." (*Id.*, PageID.9.)

Plaintiff alleges that he reached out to the private investigator to try to get new copies of the lost documents. (*Id.*, PageID.10.) The investigator told Plaintiff that all documents and discs related to Plaintiff's case had been destroyed in a home flood. (*Id.*) The investigator also told Plaintiff that he was not currently taking cases, but could recommend another investigator and that Plaintiff would have to pay for the documents again. (*Id.*) Plaintiff contends that new copies of the documents would cost thousands of dollars, and that he and his family are unable to afford those costs. (*Id.*) Plaintiff was also unable to obtain assistance from his trial and appellate attorneys because they no longer possessed any documents related to Plaintiff's case. (*Id.*) Moreover, they never possessed the documents at issue because they were never turned over by the State. (*Id.*)

8

Plaintiff contends further that his federal habeas petitions challenging the two convictions described above have been held in abeyance by the United States District Court for the Eastern District of Michigan while Plaintiff exhausts his state court remedies. (*Id.*, PageID.12.) Plaintiff initiated his state court remedies by filing a 6.500 motion in both cases, "premised on [his] [a]ttorney receiving funds from a [p]rosecutor's key witness." (*Id.*, PageID.13.) A year later, Plaintiff received the documents described above. (*Id.*) He filed a motion in Wayne County Circuit Court asking that his 6.500 motion be held in abeyance so that he could file an amended 6.500 motion "to include issues that stemmed from the findings gathered and provided to [him] by [the] [p]rivate [i]nvestigator." (*Id.*) Plaintiff prepared his amended motion and contends that it was in his legal property "with all necessary documents attached to verify [his] claims." (*Id.*) Plaintiff contends that when he prepared it, he was unable to make copies due to lack of funds. (*Id.*) He alleges that without the missing documents, he is "forever barred from raising said claims which could result in [him] spending the rest of [his] life in prison." (*Id.*) At the time Plaintiff filed his complaint, his post-convictions proceedings in both cases noted above were still pending. *See* Register of Actions, Case Nos. 12-003375-01 and 12-005176, https://cmspublic.3rdcc.org/default.aspx (select "Criminal Case Records," select "Search By Defendant," type "Cain" for "Last Name" and "Brandon" for "First Name," select "Search," then select the links for Case Nos. 12-003375-01-FC and 12-005176-01-FC) (last visited Feb. 16, 2023).

**B.     Amendment**

In his amended statement of claim, Plaintiff explains that he appeared before Hearing Officer O'Brien for a hearing on the smuggling misconduct on September 28, 2022. (ECF No. 15-1, PageID.170.) He indicates that he had previously "provided questions to be asked . . . to KCF staff, which for some unknown reason O'Brien completely refused to ask. (*Id.*) Plaintiff told

9

O'Brien that "the misconduct was trumped up as retaliation for his failure to lie on an officer and for him threatening to file a grievance." (*Id.*) Plaintiff claims that O'Brien "became loud and agitated" and sanctioned Plaintiff to "serve ten (10) days in detention which ran consecutive to the five (5) days he had already sat in detention waiting to be heard." (*Id.*) She also sanctioned Plaintiff to 30 days' loss of privileges (LOP). According to Plaintiff, O'Brien relied on facts that had nothing to do with the smuggling misconduct to find him guilty. (*Id.*, PageID.170–71.)

Plaintiff provides further information regarding the legal documents that he lost. Plaintiff contends that Major Chapman was the only witness who identified Plaintiff at the scene of the crime and that "the State possessed and failed to turn over all of the [evidence detailed] above in addition to other exculpatory evidence which not only would have contradicted the testimony of Mr. Chapman but left no doubt as to Plaintiff's innocence." (*Id.*, PageID.175.) According to Plaintiff, he is suffering the effects of long COVID and "could not recall the amount of time that was offered in the Plea Deals, nor can he recall several vital facts that were included in his documents." (*Id.*, PageID.176.) For example, Plaintiff references an affidavit prepared by witness Shantrell Turley, who was tracked by the private investigator hired by Plaintiff's family. (*Id.*, PageID.177.) Plaintiff indicates that he does not recall the facts presented in this affidavit or any other affidavit provided by witnesses. (*Id.*) He asserts that his motions for relief from judgment were denied in January of 2023 because he did not file his amended motion for relief from judgment. (*Id.*, PageID.179.)

Plaintiff also indicates that a draft civil rights complaint was included in his confiscated paperwork. (*Id.*, PageID.178.) That complaint was against staff at the Alger Correctional Facility (LMF) and concerned "their dealings with the spread of [the] COVID-19 virus in 2021." (*Id.*) Plaintiff contends that he is asthmatic and prone to bronchitis, and that staff at LMF refused to

10

provide him his inhaler after he contracted COVID-19. (*Id.*) Plaintiff "had secured several [a]ffidavits from fellow inmates and possessed a detailed account of dates, times[,] and the Defendants responsible." (*Id.*) He had not filed his complaint "for financial reasons." (*Id.*) Plaintiff contends that he cannot prepare the complaint again because he "cannot even recall all facts of each Defendant as the 'Issue' spanned over a year." (*Id.*) He also argues that he cannot obtain the affidavits again because of MDOC policies "forbid[ding] prisoner to prisoner mail." (*Id.*)

Based on the foregoing, the Court construes Plaintiff's complaint to assert First Amendment retaliation and access to the courts claims, a Fourth Amendment claim premised on the search of his cell, and Fourteenth Amendment due process claims premised upon the loss of his property and his receipt of misconducts. Plaintiff seeks an order directing KCF staff to return his documents and to provide him with funds to replace his confiscated documents. (ECF No. 1, PageID.15.) Plaintiff also seeks declaratory relief, as well as compensatory and punitive damages. (*Id.*)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

11

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, the Court previously dismissed Defendant Crane. *See Cain*, 2023 WL 21439, at *12. The Court also dismissed Plaintiff's official capacity claims, personal capacity claims seeking declaratory and injunctive relief, Fourth Amendment claims, Fourteenth Amendment due process claims premised upon the deprivation of property, and Fourteenth Amendment substantive due process claims. *See id.* Plaintiff's amended complaint does not allege facts warranting reconsideration of the dismissal of these claims. Rather, the amended complaint alleges facts amplifying Plaintiff's First Amendment access to the courts claim and his Fourteenth Amendment procedural due process claim regarding the allegedly false misconducts. Plaintiff also

appears to want to add Hearing Officer O'Brien as a Defendant. The Court, therefore, considers those claims below.

### A. First Amendment Access to the Courts Claim

The Court has construed Plaintiff's complaint to assert a First Amendment access to the courts claim related to the seizure of his legal documents.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Supreme Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

As discussed above, Plaintiff had motions for relief from judgment pursuant to Michigan Court Rule 6.500 pending in two of his Wayne County criminal cases. At the time of the Court's January 3, 2023, opinion and order (ECF Nos. 6, 7), those post-conviction proceedings were still pending, and Plaintiff alleged that they had been stayed to allow him to file amended 6.500 motions raising new claims for relief. Plaintiff, therefore, has sufficiently alleged that the underlying cause of action at issue is the type of action for which there can be an actual injury.

The Sixth Circuit has noted that "[e]xamples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citing *Jackson v.*

14

*Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)). In his amended complaint, Plaintiff now amplifies his First Amendment claim to allege that his post-conviction proceedings are no longer pending, and that his original motions for relief from judgment were denied because Plaintiff was unable to file his amended motions raising claims related to the State's failure to disclose exculpatory evidence, as well as claims that counsel never conveyed plea offers to him. Plaintiff contends that he was unable to file amended Rule 6.500 motions because "a defendant filing a baseless unsupported [m]otion was doomed for failure in any State court." (ECF No. 15-1, PageID.176.) Plaintiff, therefore, has sufficiently alleged a lost remedy with respect to his allegations that the seizure of his legal paperwork prevented him from filing amended Rule 6.500 motions and ultimately led to the denial of his post-conviction proceedings.

Plaintiff also alleges that he was unable to file a civil rights complaint regarding the handling of COVID-19 by staff at LMF in 2021. He contends that the drafted complaint was part of the legal paperwork seized by Defendants, and that he "cannot even recall all facts or each Defendant as the 'Issue' spanned over a year." (ECF No. 15-1, PageID.178.) As noted *supra*, a civil rights complaint is a type of action for which there can be an actual injury. *See Thaddeus-X*, 175 F.3d at 391. Moreover, Plaintiff has adequately alleged facts regarding his inability to file this proposed civil rights complaint.

Given Plaintiff's allegations, the Court concludes that his amended complaint sets forth a plausible First Amendment access to the courts claim against Defendants Morton, Unknown ADW, and the KCF Inspectors. Plaintiff, therefore, may proceed on that claim, as well as his First Amendment retaliation claims against the same Defendants.

B. **Fourteenth Amendment Procedural Due Process Claim**

The Court has liberally construed Plaintiff's complaint to assert a Fourteenth Amendment procedural due process claim premised upon his receipt of a misconduct for smuggling, as well as a misconduct from Defendant Crane after he found an extension cord with exposed wires in Plaintiff's property. Plaintiff believes those misconducts are false. In his amended statement of claim, he indicates that Hearing Officer O'Brien found him guilty of the smuggling misconduct on September 28, 2022, and relied upon facts that had nothing to do with the misconduct when making that finding. (ECF No. 15-1, PageID.170–71.) He avers that O'Brien sanctioned him to 10 days' in segregation (consecutive to the 5 days he spent in detention waiting for his hearing) and 30 days' LOP status. (*Id.*, PageID.170.)

As the Court previously noted, a prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Again, Plaintiff cannot allege that the misconduct conviction had any effect on the duration of his sentence, as he is serving, *inter alia*, a life sentence without parole imposed in 2012 for two counts of first-degree premeditated murder. *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=490544 (last visited Feb. 16, 2023). For inmates serving sentences for offenses committed after 2000, even a major misconduct conviction results only in the accumulation of "disciplinary time." *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to

16

aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). As noted *supra*, Plaintiff's life sentence precludes him from the possibility of parole. Even if he accumulated disciplinary time, that sanction would not warrant due process protections.

Moreover, Plaintiff's amended statement of claim alleges that he spent at most 15 days in segregation. Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period does not implicate a liberty interest. *See, e.g., Jones v. Baker*, 155 F.3d 810, 812–13 (6th Cir. 1998) (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years

17

of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

Plaintiff also avers that he received 30 days' LOP. (ECF No. 15-1, PageID.170.) Pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges" sanction involves the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive 03.03.105, Attach. E (eff. Apr. 18, 2022). Placement on LOP for 30 days, however, does not implicate a protected liberty interest. *See Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *3 (6th Cir. Nov. 9, 2017); *Langford v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3 (6th Cir. Jan. 24, 2017). Plaintiff, therefore, again fails to allege any facts showing that he was subjected to conditions which would implicate a liberty interest because of the allegedly false misconduct tickets. His Fourteenth Amendment procedural due process claims against Defendants will, therefore, remain dismissed.

## Conclusion

For the foregoing reasons, the Court will grant Plaintiff's motion to strike (ECF No. 16) his first-filed motion for leave to file an amended complaint (ECF No. 12) and will deny that motion (ECF No. 12) as moot. The Court will grant Plaintiff's second motion for leave to file an amended complaint (ECF No. 15) and deem the operative amended complaint to consist of Plaintiff's initial complaint (ECF No. 1) and the amended statement of claim (ECF No. 15-1) attached to his motion. Given Plaintiff's amended complaint, the Court will vacate its prior order of partial dismissal (ECF No. 7) to the extent it dismissed certain claims.

Having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss Defendant Crane for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and

1915A(b)(1), and 42 U.S.C. § 1997e(c). The Court will also dismiss Hearing Officer O'Brien to the extent Plaintiff intended to name her as a Defendant. Further, the Court will also dismiss, for failure to state a claim: the following claims against remaining Defendants Morton, Unknown ADW, and the KCF Inspectors: (1) Plaintiff's official capacity claims; (2) Plaintiff's personal capacity claims seeking declaratory and injunctive relief; (3) Plaintiff's Fourth Amendment claims; and (4) Plaintiff's Fourteenth Amendment due process claims. Plaintiff's First Amendment access to the courts and retaliation claims for damages against Defendants Morton, Unknown ADW, and the KCF Inspectors remain in the case.

An order consistent with this opinion will be entered.

Dated: March 17, 2023

/s/ Maarten Vermaat
Maarten Vermaat
United States Magistrate Judge