UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRANDON CAIN #490544,

        Plaintiff,

v.

NICK MORAN, et al.,

        Defendants.
_____/

Case No. 2:22-cv-00229

Hon. Robert J. Jonker
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motions for summary judgment due to Plaintiff's failure to exhaust his administrative remedies (ECF Nos. 37, 62) and Plaintiff's motion to strike, motion for sanctions, and motion to file a sur-reply (ECF Nos. 57, 70, and 71).

State Prisoner Brandon Cain filed an amended complaint, pursuant to 42 U.S.C. § 1983, alleging that his rights were violated at the Kinross Correctional Facility (KCF). (ECF No. 56.) Cain sues Sgt. Moran, Inspector DeSormeau, and Inspector Teneyck. (*Id.*) Cain alleges that Defendants retaliated against him after he refused to provide information regarding his involvement with a Corrections Officer suspected of bringing contraband into the prison. (ECF No. 24.) Cain alleges that Defendants retaliated against him by seizing his property, issuing a misconduct ticket for smuggling, and transferring him to a segregation unit at the Chippewa

Correctional Facility. (*Id.*) Cain alleges that he was denied access to the courts because his legal property was confiscated. (*Id.*, PageID.240-241.)

Initially Sgt. Moran filed a motion for summary judgment on the issue of exhaustion of administrative remedies. (ECF No. 37.) Cain filed a response (ECF No. 49) and Moran replied (ECF No. 53). But then Cain filed a motion to strike Defendant's reply. (ECF No. 57.) It is recommended that the Court deny both ECF No. 37 and ECF No. 57 as moot, because Cain filed an amended complaint (ECF No. 56), and Defendants have filed a motion for summary judgment that addresses the amended complaint (ECF No. 62).

Cain has also asked the Court to strike the Defendants most recent summary judgment motion as a second motion for summary judgment that Cain believes is not allowed without leave of Court. It is respectfully recommended that the Court deny that request and consider ECF No. 62, which addresses Cain's amended complaint.

The events of this case started with an investigation by the Michigan State Police (MSP). On September 22, 2022, the MSP conducted a search of a KCF Corrections Officer (CO) and his vehicle as part of an ongoing investigation. (ECF No. 63-4, PageID.556.) The MSP discovered Suboxone, Oxycodone, and crazy glue. (*Id.*) During the search of the CO's home, the MSP discovered a letter written by Plaintiff Cain. (*Id.*) The letter detailed that Cain would provide $500.00 for crazy glue, BBQ wings, and pizza. (*Id.*) Cain instructed that when the CO wrapped the strips, he should write how many are in each pack because it was too difficult to count them in the bathroom without anyone noticing. (*Id.*) Cain also requested

toothbrushes, floss, and water balloons. (*Id.*, PageID.556-557.) Cain wrote that he could easily sell phones for $2,000 and that he would give the CO $1,500 for each one sold. (*Id.*, PageID.557.) Cain stated that "[t]he weed moves quickly" and he can sell USB cables for $750.00. (*Id.*) Cain stated he had "2 guys that I only deal with" but he was ready "to turn it up a notch." (*Id.*)

The handwriting in the letter was consistent with known writing samples from Cain. (*Id.*) A search of Cain's cell revealed a Colgate toothbrush and three dental floss containers that were not sold at the prison store. (*Id.*) Although Cain denies any involvement with the CO, the CO stated that the letter was given to him by Cain. (ECF No. 63-4, PageID.558.) Cain was found guilty after a hearing of the Class I misconduct of smuggling.

Defendants argue that Cain failed to exhaust his administrative grievance remedies. Cain filed one relevant grievance: KCF-22-10-609-27b. In that grievance, Cain requested reimbursement for lost property. The grievance was rejected, and Cain was instructed to file a claim form for reimbursement. In his grievance, Cain did not assert retaliation or access-to-the-courts claims. In addition, this grievance was not processed in a manner that reflected that Cain was pursuing any claim other than financial reimbursement.

In the opinion of the undersigned, grievance KCF-22-10-609-27b failed to exhaust Cain's claims asserting retaliation or the denial of access to the courts. The record also establishes that Cain failed to raise his retaliatory misconduct claims during his misconduct hearing. Although Cain argues that he did raise his retaliation

claim during the misconduct hearing, the record is clear that he failed to raise retaliation in his request for a rehearing. It is therefore respectfully recommended that the Court grant Defendants' motion for summary judgment and dismiss the complaint without prejudice due to Cain's failure to exhaust his administrative remedies.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing

---

1   If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*)  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative

5

process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737). And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally

6

furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after

7

the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For

8

example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[2], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94.  If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94.  Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation.  MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the

---

[2] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe.  While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

> manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## IV. Analysis

Cain argues that he exhausted his claims by filing grievance KCF-22-10-609-27b and by asserting retaliation as a defense during his Class I misconduct hearing for smuggling. Cain's Step I grievance in KCF-22-10-609-27b, which he provided to the Court, stated the following:

---

[3] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

10



(ECF No. 67-5, PageID.589.)

The Step II appeal in KCF-22-10-609-27b, which Cain also provided, was received on November 30, 2022. (ECF No. 42-5, PageID.417.) In Cain's Step III appeal in this grievance, which is included on the same document, indicated that he did not receive a Step II response until December 20, 2022. (*Id.*) It does not appear that a Step II response is part of the Court record. Cain's Step III appeal response indicates that the Step II rejection was upheld. (ECF No. 42-5, PageID.418.)

Cain argues that since his grievance was rejected, he had no grievance remedy. The Court disagrees. Instead, the record before the Court demonstrates that Cain's grievance indicated only that his property was confiscated, and several items were

missing. Nowhere in his grievance did he assert that retaliatory action was taken or that he was denied access to the courts. The only Step I response before the Court, which Cain provided (ECF No. 67-5, PageID.589), directed Cain to make a claim for reimbursement of personal property by obtaining form DTM-1104-P from the Grievance Coordinator. This was in accordance with MDOC Policy Directive 03.02.130.

Cain's Step II appeal further indicated that he was seeking over $1,000.00 for the loss of personal property, and he could not obtain that amount by making a reimbursement claim. (ECF No. 42-5, PageID.417.) Nothing within Cain's grievance indicated that he was asserting grievable issues, such as retaliation or denial of access to the courts. Cain's grievance was an attempt to seek reimbursement for lost property. An inmate cannot submit a grievance raising a specific claim and then argue that he exhausted other unspecified claims. The inmate must give prison officials a fair opportunity to respond to his specific claims, allowing the prison "to create an administrative record for those disputes that eventually end up in court." *Mattox*, 851 F.3d at 596. In the opinion of the undersigned, Cain failed to raise his retaliation or denial of access to the courts claim in a properly exhausted grievance.

Further, Cain's grievance was not completed until February 10, 2023, which was after he filed his original complaint on December 8, 2022. (ECF No. 1 and 42-5, PageID.418.) Under certain circumstances, a prisoner may amend his complaint and add new claims that have been exhausted after the commencement of the lawsuit. *Mattox*, at 592. The Sixth Circuit held that "[i]f a prisoner exhausts some of his

12

claims after a proper federal lawsuit has been filed as to other claims, and then moves to amend his complaint to add the newly exhausted claims, the policy behind the PLRA's exhaustion requirement is still met because prison officials will have a had a fair opportunity to address the new claims on the merits." *Id.* But where a prisoner failed to exhaust any claims before filing his original complaint, such as here, a prisoner may not save the cause of action by exhausting new claims asserted in an amended complaint after the date he filed his original complaint. *Id.* at 593. Therefore, even if Cain had properly raised his retaliation and denial of access to the courts claims in his grievance KCF-22-10-609-27b – which, importantly, was not completed until after he filed his original complaint – his failure to exhaust *any* claims prior to filing his original complaint renders his claims unexhausted at the time he filed this action. *Id.* In the opinion of the undersigned, KCF-22-10-609-27b did not exhaust the claims asserted by Cain in this action.

Similarly, Cain failed to exhaust his retaliatory misconduct claim by not raising the issue in his misconduct hearing and appeal. As stated above, to exhaust a false retaliatory misconduct claim, Cain needed to raise the issue of retaliation during his misconduct hearing, and then raise the issue when he requested a rehearing. Cain asserts that his misconduct ticket for smuggling was false and retaliatory. Defendants argue that Cain did not exhaust his retaliation claim by raising the issue of exhaustion at his misconduct hearing. Cain argues that he did raise the issue of retaliation at the misconduct hearing. The Misconduct Hearing Report, however, confirms that Cain did not raise a retaliation argument during the

13

hearing. The Report demonstrates that Cain was given an opportunity to present a defense and did so. But he did not argue retaliation. The Misconduct Hearing Report states the following:

> **EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**
>
> The hearing is conducted via Video Teleconferencing. Unless otherwise noted, documents are one page. This hearing is timely held within the required 7 business days. The prisoner is present and the misconduct report is reviewed with him along with his statement he was in segregation and no visits so he could not have smuggled anything, it should be only conraband, he never gave anyone a letter and if he was given it by staff he was authorized (2 pg), 3 page Summary of the Investigation which is confidential for the security of the facility, Letter, 2 handwritting samples, picture, Cell History, OTIS Profile (3 pg), Non Bond Toplock Form, and Misconduct Screening Form. Prisoner Cain states that he bought it off a guy on the yard and he never wrote the letter. Prisoner has nothing further to add. No further evidence is needed. Prisoner is informed of the findings, sanction and sanction dates and told he will receive the report later.
>
> **REASONS FOR FINDINGS**
>
> Prisoner Cain brought into Steamboat which is a specialized area of the facility toothbrush and 3 packs of Floss without staff authorization on 9-23-22 at 0800 hrs. A prisoner is not allowed to bring anything into Steamboat without staff authorization and if he had it in his cell he had to have had someone bring it in and pass it to him without staff authorization. An officer can never authorize the introduction of contraband in to a facility. MDOC PD 03.03.105 Attachment A 045 defines Smuggling as "Bringing or attempting to bring any unauthorized item into or out of a correctional facility or a specialized area or unit within a facility such as segregation." Prisoner Cain's statement that he did not have a visit and was in a segregation cell is not a defense as he could have easily had someone pass it to him in his cell such as a prisoner porter or hide it in acceptable property so he could have it passed it to him. It also is not a defense if he was given it by staff because a staff member is not authorized to bring any contraband in the facility or give it to any prisoner so can not given authorization. Finally it is clear he gave a letter to an officer to smuggle items including dental floss and super glue because the letter was found in the officer's found and has the same handwriting as his samples in particular s, k, w, f & B. Prisoner Cain's statement is not believed because if he got them from another prisoner he would have wanted that prisoner as a witness. The Sergent is clear and factual in his statement and is found to be credible. The charge is upheld. They should be turned over to the Michigan State Police.
>
> **PROPERTY DISPOSITION (for contraband see PD 04.07.112)**
>
> **FINDINGS**
>
> Charge No. 1   ☒ Guilty   ☐ Not Guilty   ☐ Dismissed   Reporting Code  045

(ECF No. 63-5, PageID.564.)

In addition, Cain's written prehearing questions, which he wrote, do not indicate that retaliation was at issue. (*Id.*, PageID.566.)

Even accepting the assertion that Cain raised the retaliation issue during his misconduct hearing even though the hearing officer did not document that assertion, Cain's Request for Rehearing failed to indicate that he was claiming retaliation. (*Id.*, PageID.563.) Cain's Request for Rehearing form stated:

14

| PRISONER'S NUMBER | PRISONER'S NAME | | INSTITUTION |
|---|---|---|---|
| 440544 | Branden Cain | | URF |
| DATE OF MISCONDUCT | TYPE OF HEARING (IF MISCONDUCT, LIST CHARGES ALSO) | | |
| 09-23-22 | Misconduct hearing / smuggling | | |
| DATE OF HEARING | | | |
| 09-28-22 | | | |

Briefly explain why you believe a rehearing should be ordered: A Rehearing Should occur Because (1) my Due Process was violated and (2) The decision of The ALJ Is not supported by competent material and Substantial evidence on The Record As A whole. In The ALJ's "Reasons for findings" The Reasons have No Relation whatsoever To The misconduct. My misconduct did not Result from me Attempting To Smuggle Anything Into URF'S hole A.K.A "Steamboat". The entire Reason's for findings have nothing To do with The Issued Misconduct In violation of P.D 03.03.105 EE. In addition my Due Process was violated when The hearing officer failed To Present my questions and Retrieve Any Answers to Said questions As Required by P.D03.03.105 (V) Please See Attached questions. Lastly my statement was Not Considered, I Never Stated I was In Segregation as A Defense.

| SIGNATURE OF PERSON REQUESTING REHEARING | DATE |
|---|---|
| [signature] | 10-3-22 |

**DECISION**

☒ Disapproved     SEE ATTACHED

(*Id.*)  Cain's request for a rehearing was denied. (*Id.*, PageID.562.)  Cain's rehearing request demonstrates that he failed to raise retaliation as an issue in his request for a rehearing of his misconduct conviction for smuggling.  In the opinion of the undersigned, Cain failed to exhaust his claim that his Class I misconduct ticket for smuggling was retaliatory.

### V. Motions for Sanctions and for Leave to file a sur-reply brief

Cain moves for sanctions under Fed. R. Civ. P. 11 against Defendants for filing a motion for summary judgment that contained untruthful "facts." (ECF No. 70.) An attorney may be sanctioned under Rule 11(b) for filing improper motions,

15

unwarranted or frivolous arguments, or for making arguments without factual support. Cain has failed to establish that Rule 11 sanctions are appropriate. Moreover, because the Court is recommending dismissal of this action, Cain's motion is moot.

Cain also moves for leave to file a sur-reply brief. (ECF No. 71.) This Court's Local Civil Rules allow for a response to a dispositive motion and then a reply to the response. W.D. Mich. LCivR 7.2(c). "The court may permit or require further briefing." *Id.* This Court has noted that "[i]t is well-established that parties do not have a right to file a sur-reply brief, whether under the Federal Rules of Civil Procedure or the Local Civil Rules of our district, and both this court and other federal courts rarely grant leave to file a surreply." *Aslani v. Sparrow Health Sys.*, No. 1:08-CV-298, 2009 WL 3711602, at *22 (W.D. Mich. Nov. 3, 2009) (footnote omitted). The Court may grant leave to file a sur-reply to afford a party an opportunity to address new issues raised for the first time in the reply. *Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173, 175 (N.D. Ohio 2010). In the opinion of the undersigned, further briefing of the issues before the Court is not necessary. It is recommended that the Court deny Plaintiff's motion for leave to file a sur-reply brief.

### V. Recommendation

The undersigned respectfully recommends that the Court deny both ECF No. 37 and ECF No. 57 as moot, because Cain filed an amended complaint and Defendants have filed a motion for summary judgment that addresses the amended complaint. (ECF No. 62.)

It is further recommended that the Court deny Cain's motions to strike (ECF No.57)[4], for sanctions (ECF No. 70), and for leave to file a sur-reply (ECF No. 71), and that the Court grant Defendants' motion for summary judgment due to Cain's failure to exhaust his administrative remedies (ECF No. 62) and dismiss the complaint without prejudice.

Dated:   October 26, 2023                          /s/ *Maarten Vermaat*
                                                   MAARTEN VERMAAT
                                                   U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

---

[4]   Cain requested in his response brief that the Court strike Defendants' most recent motion for summary judgment (ECF Nos. 62) and he reiterated that request during the status conference held on September 13, 2023.  (ECF No. 69.)